**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ADRIAN & BLISSFIELD RAILROAD
COMPANY,

      Plaintiff,

v.                                          Case No. 06-CV-10137-DT

VILLAGE OF BLISSFIELD,

      Defendant.
                                 /

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND RESCHEDULING BENCH TRIAL**

Pending before the court is a motion for summary judgment filed by Plaintiff Adrian & Blissfield Railroad Company (the "Railroad" or "Plaintiff") on August 8, 2006. The matter has been fully briefed and the court conducted a hearing on October 18, 2006. For the reasons stated below, the court will deny Plaintiff's motion.

**I. INTRODUCTION**

On January 1, 2006, Plaintiff initiated this action against Defendant Village of Blissfield (the "Village" or "Defendant") challenging the legality of Defendant's actions in (1) constructing sidewalks on and adjacent to Plaintiff's property and (2) charging for that construction. Plaintiff argues that Defendant's actions, which Defendant argues were undertaken pursuant to state law, are preempted by federal law governing railroads.

Under the Supremacy Clause, "the Laws of the United States . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the

Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  While the Supremacy Clause authorizes federal law to preempt conflicting state law, "intent to preempt state law must be 'the clear and manifest purpose of Congress.'"  *Nye v. CSX Transp., Inc.*, 437 F.3d 556 (6th Cir. 2006) (quoting *CSX Transp., Inc. V. Easterwood*, 507 U.S. 658, 663-64 (1993)).  This is because "[i]n the interest of avoiding unintended encroachment on the authority of the States . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption."  *CSX Transp. v. Easterwood*, 507 U.S. 658, 663-664 (1993). The Supreme Court has summarized general preemption law as follows:

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law.  Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed. 2d 604 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed. 2d 180 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed. 2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed. 2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.  *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).  Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.  *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed. 2d 664 (1982); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed. 2d 580 (1984).

*Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 368-69 (1986).  Preemption "is purely a question of law." *Nye v. CSX Transp., Inc.,* 437 F.3d 556, 563 (6th Cir.

2006) (citing *Tyrrell v. Norfolk S. Ry. Co.,* 248 F.3d 517, 520 (6th Cir.2001), *GTE Mobilnet v. Johnson,* 111 F.3d 469, 475 (6th Cir. 1997)).

## II. BACKGROUND

Plaintiff is a short line railroad engaged in interstate commerce. On April 2, 2003, a Special Assessment District was created within the Village for a US 223 sidewalk project that included property of Plaintiff. (Pl.'s Mot. Br. at 2.) Defendant asserts that all property owners who were located within the district, including the Railroad, were given written notice of the 2003 project. (Def.'s Resp. at 3.) Defendant also maintains that it held two public hearings on the issue and notice of the hearings was published, as required by local ordinance, in the local newspaper. (*Id.*) Defendant argues that Plaintiff was made "fully aware" of the 2003 project, and that Defendant's architect even sent drawings to Plaintiff in the hopes of obtaining input. (*Id.*) Plaintiff did not respond to or comment on those drawings, and did not otherwise involve itself in any aspect of the 2003 project. Plaintiff disputes when it first was given notice of the sidewalk construction project,[1] but that dispute is not material to the inquiry before the court. The sidewalks were constructed in November and December, 2003. (Pl.'s Mot. Br. at 3.)

The 2003 project included a sidewalk that, according to Defendant, ran along the north side of US 223, on the Michigan Department of Transportation ("MDOT") US 223 right-of-way, and was not on the Railroad property. (Def.'s Resp. at 4.) Despite this contention, Defendant admits that during the 2003 construction, the constructed

---

[1] Plaintiff contends that it did not receive any correspondence from Defendant regarding the project until August 26, 2003 (rather than the April, 2003 dates apparently relied upon by Defendant), and that it immediately responded by way of a September 5, 2003 letter that federal law preempts the Village's proposed actions.

3

sidewalks crossed the Railroad's tracks at the point where the tracks crossed US 223. (Def.'s Resp. at 4.) Defendant asserts that "[a]lthough the sidewalks continued across the railroad tracks at this point, this work occurred in the MDOT US 223 right-of-way. The sidewalk was placed in the area where the railroad right-of-way and the MDOT right-of-way intersected." (*Id.*) Defendant obtained a permit from MDOT for the performance of any work in this right-of-way and, following the completion of the 2003 project, MDOT inspected and approved the work done by Defendant. (*Id.*; Def.'s Exs. 6 & 13.)

Although Plaintiff originally asserted that the sidewalks along US 223 were within Plaintiff's railroad yard, (Pl.'s Mot. Br. at 4), in its reply brief, Plaintiff states that it has "concluded that it could not prove that the installation of the sidewalks along the northern side of US 223 are within Plaintiff's right-of-way." (Pl.'s Reply Br. at 1.) Plaintiff further "concedes that the construction of those sidewalks were within the sole discretion of Defendant."[2] (*Id.*)

Plans for the 2004 sidewalk project were made in late 2003. (Def.'s Resp. Br. at 6.) The 2004 project was anticipated to include (1) the repair of an existing sidewalk along Maple Street, (2) the repair of an existing sidewalk along Monroe Street, and (3) the placement of a new sidewalk on the west side of Monroe Street. (*Id.*) There does not appear to be any dispute that these three sidewalks, at least in part, traversed the Railroad's right-of-way. (*Id.*) The parties again dispute the nature of the notice provided

---

[2]This concession, however, does not affect Plaintiff's motion because Plaintiff nonetheless argues that assessing the Railroad for the costs of these sidewalks is still preempted by federal law. (Pl.'s Reply Br. at 1.)

to the Railroad regarding these projects.  Defendant claims that it sent several letters, gave Plaintiff the option to install the three sidewalks at the point that they crossed the Railroad's right-of-way, sent Plaintiff proposed plans, and provided notice of public hearings in the local newspaper.  (Def.'s Resp. Br. at 6.)   Conversely, Plaintiff again contends that it did not receive any notice until September, 2004, and that it immediately sent Defendant a letter indicating that it had observed construction activities taking place in the Railroad's right-of-way.  (Pl.'s Mot. Br. at 4.)  Plaintiff told Defendant that it "did not have permission to enter the right-of-way, and that the safety of the trains, employees and public were compromised." (*Id.* at 4-5.)   In a subsequent letter, Plaintiff also put "the Village on notice that its construction work had damaged the Railroad's tracks and signaling system and fouled the rails.  An inspection of the area also disclosed a problem with the track structure as a consequence of excavation." (*Id.* at 5; Pl.'s Ex. 11.)  The letter also set forth the conditions under which it would allow construction of the right-of-way, but asserted that it would not assume any responsibilities of the cost of the Village's project.  (Pl.'s Mot. Br. at 4; Pl.'s Ex. 11.)  Plaintiff claims that although Defendant agreed to Plaintiff's conditions, it thereafter violated them.  (Def.'s Mot. Br. at 6.)  Defendant contends that after requesting several times that the Railroad install sidewalks, Defendant was forced to hire a contractor and install the sidewalks itself.  (Def.'s Resp. Br. at 6.)  In November or December, 2004, Defendant constructed sidewalks across the railroad tracks in Plaintiff's right-of-way. (*Id.*; Pl.'s Mot. Br. at 6.)

Defendant charged Plaintiff for the work performed in both 2003 and 2004. According to Plaintiff, Defendant charged Plaintiff: $5,307.81 for the long expanse of

sidewalk along US 223; $9,500 for the shorter length of walkway along and across US 223; and $5,385 for the three crossings on Monroe and Maple Streets. (Pl.'s Mot. Br. at 6.) The County of Lenawee paid the funds to the Village and, thereafter, placed a lien on the Railroad's property.[3]

Plaintiff initiated this action on January 1, 2006, seeking a declaratory judgment that the lien against Plaintiff's property is invalid and that Defendant may not (1) construct sidewalks on or about its property; (2) require the Railroad to construct sidewalks; or (3) require the Railroad to pay for such sidewalks. Plaintiff also seeks a money judgment for damages allegedly incurred during the construction of Defendant's sidewalks.[4] Following discovery, Plaintiff brought the instant motion, arguing that it is entitled to summary judgment on its declaratory judgment claims because Defendant's actions were preempted by two federal statutes: 49 U.S.C. § 20106 and 49 U.S.C. § 10501. A bench trial is currently set for October 30, 2006 at 9:00 a.m.

### III. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has

---

[3] The County of Lenawee is not a party in this action. During the October 18, 2006 hearing, Plaintiff's counsel assured the court that, if successful at trial, the court could fashion an order which would provide final relief to Plaintiff, even without the county being a party to this action.

[4] Plaintiff's summary judgment motion does not address its claim for money damages, which is brought presumably as a state tort action for trespass. Even if the court were to grant Plaintiff's motion, it would be only a partial summary judgment, inasmuch as there has been no briefing or evidence presented on Plaintiff's alleged damages for trespass.

carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must

determine if there is a genuine issue for trial.  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.  DISCUSSION

Defendant argues that its actions in constructing the sidewalks and in charging Plaintiff for that construction were authorized by two Michigan statutory provisions. Defendant points to Mich. Comp. Laws § 462.131, which provides that "[t]o the extent provided in this act, [MDOT] shall have and exercise regulatory and police power over railroad companies in this state insofar as such power has not been preempted by federal law or regulation."  Mich. Comp. Laws § 462.131(1).  Thereafter, the statute states:

> A railroad owning tracks across a public street or highway at grade shall at its sole cost and expense construct and thereafter maintain, renew, and repair all railroad roadbed, track, and railroad culverts within the confines of the street or highway, and the streets or sidewalks lying between the rails and for a distance outside the rails of 1 foot beyond the end of the ties. The road authority at its sole cost and expense shall construct or improve if necessary and thereafter maintain, renew, and repair the remainder of the street or highway.

Mich. Comp. Laws § 462.309(1).  Subsection six of this section further provides:

> In cases of sidewalk repair or construction, a railroad shall first be given the right to construct in the same manner as that right is given to individuals, and if it fails, the local unit of government may cause the sidewalk to be constructed at the expense of the railroad, with the cost to be collected in the usual manner as provided in the law governing that local unit of government. . . .

Mich. Comp. Laws § 462.309(6).  Defendant contends that, pursuant to the authority granted to it under § 462.309(6), it first contacted the Railroad to repair or construct the relevant sidewalks but when its requests went unanswered, it constructed the sidewalks and charged the Railroad for the construction.  Although Plaintiff argues that Defendant

8

did not comply with § 462.309(6), the court does not accept that argument. First, on summary judgment, all factual inferences must be made in favor of Defendant, and Defendant has provided evidence which, if believed, would be a sufficient basis on which to conclude that it attempted to comply with the statute. Moreover, the court is not persuaded by Plaintiff's argument that § 462.309(1) applies only to sidewalks which lie on the Railroad's right-of-way and § 462.309(6) applies only to the sidewalks which abut a public street. (Pl.'s Mot. Br. at 26.) Rather, it appears that § 462.309(6) applies in *any* situation where the Railroad fails to install or repair sidewalks. Inasmuch as Defendant has presented evidence that the Railroad refused upon request to construct the sidewalks, the court finds that, at least for purposes of summary judgment, Plaintiff has not established as a matter of law that Defendant did not comply with § 462.309(6).[5]

Having found that Defendant has presented a triable issue with respect to its compliance with § 462.309(6), the court will now consider whether that statute is preempted by the two federal statutes upon which Plaintiff relies: 49 U.S.C. § 20106 and 49 U.S.C. § 10501.[6]

### A. 49 U.S.C. § 20106

---

[5]In its reply brief, Plaintiff argues for the first time that any attempt by the Village to construct sidewalks on the Railroad's property without its permission violates the laws of eminent domain, as well as the controlling Michigan statute on sidewalks. (Pl.'s Reply Br. at 3, citing Mich. Comp. Laws § 67.8.) However, because Plaintiff did not raise this argument until its reply brief, Defendant has not been given a chance to brief it. The court will therefore reserve this issue for trial.

[6]During the October 18, 2006 hearing, Plaintiff clarified that it argues that 49 U.S.C. § 20106 preempts the Village's actions with respect to the construction of sidewalks on the Railroad's right-of-way, and 49 U.S.C. § 10501 preempts the Village's attempts to charge the Railroad for construction of all of the sidewalks.

Plaintiff first contends that Defendant's actions are preempted by the Federal Railway Safety Act (the "FRSA"), which provides preemption for certain laws related to railroad safety. 49 U.S.C. § 20106. There is no dispute that Plaintiff is a short line railroad engaged in interstate commerce and is therefore subject to 49 U.S.C. § 101 and certain federal regulations promulgated thereunder. The Department of Transportation has authority to promulgate regulations relating to railroad safety matters under 49 U.S.C. § 20106. The Federal Railroad Administration ("FRA") is an agency is an administration in the Department of Transportation created to carry out the railroad safety laws of the United States on behalf of the Secretary of Transportation. 49 U.S.C. § 103. However, the Secretary of Transportation maintains ultimate responsibility "for all acts taken under those laws and for ensuring that the laws are uniformly administered and enforced among the safety offices." 49 U.S.C. § 103. Under § 20106,

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order--
>
>   (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
>   (2) is not incompatible with a law, regulation, or order of the United States Government; and
>   (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106. The Sixth Circuit has stated that this "express preemption provision . . . provides for uniformity of law between the states to enact railroad safety laws until the Secretary of Transportation . . . addresses the issue." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 561 (6th Cir. 2006). Pursuant to this authority, the FRA issued the following regulation regarding preemption of state law:

> Under 49 U.S.C. § 20106, issuance of these regulations preempts any State law, regulation, or order covering the same subject matter, except an additional or more stringent law, regulation, or order that is necessary to eliminate or reduce an essentially local safety hazard; is not incompatible with a law, regulation, or order of the United States Government; and that does not impose an unreasonable burden on interstate commerce.

49 C.F.R. § 213.2.

Thus, under 49 U.S.C. § 20106, if the challenged regulation relates to railroad safety, it is preempted, with two exceptions: (1) a state may adopt or continue in force a law which relates to railroad safety if the federal government has not yet issued a law, a regulation or order "covering the subject matter" of the state law[7] and (2) when there is a federal regulation covering the subject matter, "a State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order . . . is necessary to eliminate or reduce an essentially local safety or security hazard; . . . is not incompatible with a law, regulation,

---

[7]With respect to this provision, the Supreme Court has "explained that the language of the FRSA's pre-emption provision dictates that, to pre-empt state law, the federal regulation must 'cover' the same subject matter, and not merely '"touch upon' or 'relate to' that subject matter.' . . . Thus, 'pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.'" *Norfolk Southern Ry. Co. v. Shanklin,* 529 U.S. 344, 352 (2000) (citing *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658 (1993)).

11

or order of the United States Government; and . . . does not unreasonably burden interstate commerce." 49 U.S.C. § 20106.

Plaintiff first contends that, because Defendant is a municipality and not the State, any of its actions related to railroad safety are preempted, because the exceptions listed in 49 U.S.C. § 20106 apply only to State laws, not to municipal laws. Plaintiff cites *CSX Transp. v. City of Plymouth,* 86 F.3d 626 (6th Cir. 1996), which indeed held that the exceptions under 49 U.S.C. § 20106 do not apply to municipal regulations. Plaintiff argues that it makes no difference that Defendant's actions may have been authorized by a state statute, because *CSX* held that "[m]unicipal legislation . . . neither becomes the 'law, regulation, or order' of a state when promulgated under state constitutional authority nor meets an FRSA preemption clause exception because it is authorized by a state constitution." *Id.* at 628. In *CSX,* however, the challenged law was a *municipal* ordinance, enacted pursuant to state constitutional authority. In this case, however, the challenged law is indeed a *state* law, which authorizes the Village to act in a certain way. The court finds this distinction to be controlling. Title 49 U.S.C. § 20106 allows state laws to enact or continue in force laws relating to railroad safety in certain circumstances. That the state law allows, or requires, municipal action is immaterial.[8] The court thus finds that the exceptions of 49 U.S.C. § 20106, if factually

---

[8]Plaintiff's additional challenge to the Village's enactment of a Special Assessment District in relation to the 2003 project is also immaterial. While the district was enacted pursuant to the Village's authority under Mich. Comp. Laws § 462.309, the creation of the district is merely the method of collecting charges that the Village contends it was authorized to collect under Mich. Comp. Laws § 462.309. The *method* of charging Plaintiff is secondary to the primary challenge of the Village's authority to construct the sidewalks and charge Plaintiff for them in the first place. This authority comes, if at all, from Mich. Comp. Laws § 462.309.

applicable, are available to Defendant, who was acting pursuant to a state law, not a municipal ordinance.

In determining whether 49 U.S.C. § 20106 preempts Mich. Comp. Laws § 462.309, the preliminary inquiry is whether the state law "relates to" railroad safety. If it does not, then 49 U.S.C. § 20106 does not apply, because only laws (state *or municipal*)[9] which relate to railroad safety are preempted. It does not matter whether the state law expressly references railroad safety; nor is the stated purpose of the state law necessarily controlling. *CSX Transp. v. City of Plymouth,* 86 F.3d at 629. Rather, a law "relates to" railroad safety if it has a "connection with" railroad safety. *Id.*

The court finds that this issue requires further factual development before the court can conclude whether Mich. Comp. Laws § 462.309 does, or does not, relate to railroad safety. The court is not persuaded by Plaintiff's argument that it is "fairly obvious" that Defendant's actions relate to railroad safety merely because the construction of the sidewalks was for the safety of pedestrians. (Pl.'s Mot. Br. at 18.) Safety and railroad safety are separate concepts and, especially given the proximity of the sidewalks to the state highway, the court is not persuaded *as a matter of law* that the construction of the sidewalks necessarily relates to railroad safety.[10] Plaintiff cites two cases which purportedly stand for the proposition that the construction of walkways

---

[9]For this reason, even if the court had found that 49 U.S.C. § 20106's exceptions were not available to the Village, Plaintiff would nonetheless not be entitled to summary judgment unless it had shown as a matter of law that Mich. Comp. Laws § 462.309 "relates to" railroad safety.

[10]Moreover, while it is possible, as Plaintiff suggests, that the actions of Defendant regulated "railroad activities," again, this is a separate inquiry than whether they regulated railroad *safety.* (*See* Pl.'s Mot. Br. at 18.)

is preempted by 49 U.S.C. § 20106.  *See Missouri Pacific R.R. Comp. v. R.R. Comm'n of Texas*, 948 F.2d 179 (6th Cir. 1991); *Norfolk and W. Ry. Comp. v. Burns*, 587 F.Supp. 161 (E.D. Mich. 1984) (Guy, J.).  However, aside from the factual distinctions which may be made to the present case, both of these cases were decided after full bench trials.  *Missouri Pacific R.R. Comp.*, 948 F.2d at 181; *Norfolk and W. Ry. Comp.*, 587 F.Supp. at 161.[11]  This court has not yet had the benefit of hearing all of the evidence and, more importantly, being able to weigh the evidence and make factual determinations.[12]  Accordingly, Plaintiff's motion on this issue is simply premature and the court will reserve ruling on the preemptive effect of 49 U.S.C. § 20106 until trial.[13]

### B.  49 U.S.C. § 10501

Plaintiff also argues that Mich. Comp. Laws § 462.309 is preempted as a matter of law by the Interstate Commerce Commission Termination Act (the "ICCTA"), 49 U.S.C. § 10501. The Surface Transportation Board ("STB") exists within the Department

---

[11] Indeed, in *Missouri Pacific R.R. Comp.*, the district court had originally granted summary judgment, but on appeal the Fifth Circuit "held that summary judgment was inappropriate . . . because there existed 'a material fact issue concerning the interrelationship between the state walkway requirement and federal track regulations.'" *Missouri Pacific R.R. Comp.*, 948 F.2d at 181 (citing *Missouri Pacific R.R. Comp. v. R.R. Comm'n*, 833 F.2d 570 (5th Cir. 1987)).

[12] This is not to say that the court would *never* be able to make such a determination on summary judgment.  *See, eg., CSX*, 86 F.3d at 629.  The court finds, however, that in this case Plaintiff has failed to carry its burden of demonstrating that the evidence "construed favorably to the non-moving party, do[es] not raise a genuine issue of material fact for trial."  *Gutierrez*, 826 F.2d at 1536.

[13] Further, not only does the preliminary question of whether the state law relates to railroad safety require further factual development, but so too does the applicability of the possible exceptions to preemption under 49 U.S.C. § 20106.

of Transportation, 49 U.S.C. § 701, with jurisdiction over transportation by rail carrier, 49 U.S.C. § 10501.  Specifically, § 10501 states that jurisdiction of the STB over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501.  As with 49 U.S.C. § 20106, the court finds that issue has not been sufficiently developed to allow the court to find that Mich. Comp. Laws § 462.309 is preempted as a matter of law.  Plaintiff argues that "the ICCTA prevents the Village of Blissfield from mandating capital improvements to the Railroad's property.  All of the construction work was done without permission and in violation of the law."  (Pl.'s Mot. Br. at 24.)   The court, however, is not persuaded that there is no issue of fact with respect to these factual predicates.  Moreover, the court is not persuaded, at this point, that the construction of the sidewalks constitutes "construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or

15

facilities." 49 U.S.C. § 10501(2).[14]  Plaintiff's motion for summary judgment will therefore be denied on this issue.

### IV.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Plaintiff's motion for summary judgment [Dkt. # 12] is DENIED.

IT IS FURTHER ORDERED that bench trial currently scheduled for **October 30, 2006** is RESCHEDULED for **November 27, 2006 at 9:00 a.m.**  All pre-trial documents[15] shall be submitted to the court by **November 15, 2006**.  Additionally, although the parties submitted joint proposed findings of fact and conclusions of law on July 12, 2006, the court finds it likely that the document will need to be refined, inasmuch as the issues in the case have changed to some degree through the briefing and resolution of Plaintiff's motion for summary judgment.  Accordingly, the parties are DIRECTED to file revised joint proposed findings of fact and conclusions of law on or before **November**

---

[14]The court notes that, although the preemptive effect of the ICCTA appears to have evolved into Plaintiff's primary argument, both parties have focused their briefing more on the FRSA than on the ICCTA.  The court expects that, either at trial or in their trial briefs, the parties will provide additional case citations regarding the preemptive effect of the ICCTA and, additionally, how the ICCTA applies to the facts of this case.

[15]Such documents include any motions in limine and all documents described in the court's June 27, 2006 Scheduling Order at ¶ 7.

**15, 2006**.[16]  A copy of this revised document shall also be submitted to the court in Wordperfect format, either through the chambers' email or on a diskette.

        S/Robert H. Cleland  
        ROBERT H. CLELAND  
        UNITED STATES DISTRICT JUDGE

Dated:  October 25, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 25, 2006, by electronic and/or ordinary mail.

        S/Lisa Wagner  
        Case Manager and Deputy Clerk  
        (313) 234-5522

---

[16]The court will disregard the July 12, 2006 filing.  Thus, the revised version should include all proposed findings and conclusions, not just those which have changed since July 12, 2006.

S:\Cleland\JUDGE'S DESK\C3 ORDERS\06-10137.ADRIAN.SJ.Preemption.Final.wpd